## BERG v. FRIEDMAN.
### No. 3035.

District Court, D. Massachusetts.
May 26, 1930.

961

Elbridge R. Anderson, of Boston, Mass., for plaintiff.

Lee M. Friedman and Damon E. Hall, both of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is a bill in equity to secure an accounting from the defendant respecting the proceeds of certain personal property assigned by the plaintiff to the defendant in trust for certain named creditors of the plaintiff.

This case was tried with Law No. 3466 (Friedman v. Berg) under an order that the evidence in each should, so far as material, be considered evidence in the other.

The controlling facts necessary to a decision of the questions raised in this proceeding are these:

The plaintiff Berg, in 1919, had pledged with the Fidelity & Deposit Company of Maryland certain securities to protect the surety company against any loss resulting from its act in signing, as surety, an indemnity bond given by the plaintiff, as principal, in the penal sum of $500,000. When, in 1920, Berg went to Europe, he owed creditors in America substantial sums of money. While he was in Bucharest, these creditors became restive and threatened legal proceedings which would have resulted in attaching, or garnisheeing, Berg's rights in the hypothecated securities. Knowledge of this contemplated action came to the defendant Friedman, who had, with other members of his firm, acted for several years as attorney for the plaintiff. As a result of conferences and correspondence with these creditors, Mr. Friedman prepared and forwarded to Berg an assignment of his rights in these pledged securities for the benefit of certain of said creditors. Berg modified the assignment by adding thereto another creditor, and executed and forwarded it to Friedman. It read as follows:

"Know all Men by these Presents that I, Abraham J. Berg, of the City, County and State of New York, in the United States of America, now temporarily staying in the City of Bucharest, Roumania, in consideration of One Dollar ($1.00) and the stipulation mentioned in my letter, dated at Bucharest, November 26th, 1921, and addressed to Lee M. Friedman of Boston, Massachusetts and other good and valuable considerations to me paid by Lee M. Friedman, of Boston, in the County of Suffolk, and the Commonwealth of Massachusetts, and said United States of America, the receipt whereof is hereby acknowledged, do hereby sell, assign and transfer unto said Lee M. Friedman, as Trustee for the Peoples National Bank of Boston, and the C. Beckius Company of Philadelphia and John E. Kerr, of New York, all my right, title and interest in and to all securities heretofore deposited by me with the Fidelity & Deposit Company of Maryland, a corporation organized and existing under the laws of the State of Maryland, said securities having been deposited by me under the terms of a certain agreement made by me with the said Fidelity & Deposit Company of Maryland, dated September 18th, 1918, and deposited with said Company by me as collateral security to protect it against loss on account of its having signed a certain bond in my behalf given to the Aktiebolaget Transito of Sweden.

"To have and to hold the same to the said Lee M. Friedman, Trustee, with power to take possession of and sell or otherwise dispose of said securities in my name and as my attorney, hereunder duly authorized to his own use as Trustee as aforesaid.

"In witness whereof I have hereunto set my hand and seal this 1st day of December 1921.

"Abraham J. Berg."

From the terms of the assignment and the correspondence that passed between Berg and Friedman, it is clear that Berg intended that, as soon as these securities were redeemed from the pledge to the surety company, they would be turned over to the assignee and the proceeds derived therefrom would be distributed among the creditors named in the assignment. This is apparent when we note that, in the plaintiff's letter of November 26, 1921, written to the defendant inclosing the executed assignment, he asks that Friedman obtain from the creditors a stipulation that they "wait one year with the collection of their claims, unless of course the collateral referred to in the assignment becomes available sooner." There was some delay in redeeming the securities, and it was not until late in May, 1923, that the surety company delivered to the defendant $79,000 of Liberty bonds and $1,547.07 cash. These bonds were sold at the market for $78,209.22, which with the cash made a total in the hands of the trustee, subject to the terms of the trust, of $79,756.29. From this amount, with the consent of the three named creditors, beneficiaries under the trust agreement, there was deducted $8,589.57, which was applied on account of Berg's indebtedness to the firm of Friedman & Atherton for services rendered by them in connection with other matters. The balance was distributed as follows:

People's National Bank, $45,094.40.
C. Bockius Company, $14,092.00.
John E. Kerr, $11,978.20.

This distribution was made on or about June 7, 1923, and the defendant immediately advised the plaintiff of the extent and manner of the distribution, especially calling the plaintiff's attention to the fact that the sum of $8,589.57 had been applied on account of Berg's indebtedness to Friedman & Atherton. In Friedman's communication, Berg was asked to sign and return to the other creditors a form of assent to this deduction. The plaintiff never signed the requested form of assent, but, on the other hand, it was not until some time in 1925 that he first intimated to Friedman that he did not approve of the deduction.

At the time of the distribution the creditors were called together and agreed among themselves as to the amount of their respective claims and the amount to be paid upon these claims. The defendant accepted these amounts without requiring any further proof as to the amount due from each.

Included in the claim of the People's National Bank was a $30,000 note made by the W. E. Davis Company which carried the individual indorsements of the directors of the company. Berg was a director, and the indorsement was in the following form: "Waiving demand and notice Abraham J. Berg, by Walter A. Davis, Attorney."

The W. E. Davis Company was a Massachusetts corporation, organized in 1917 by the plaintiff Berg with a capital stock of $50,000, which was later increased to $100,000 divided into 2,000 shares of the par value of $50 each. Berg owned outright 1,120 shares. He also held certificates representing the remaining 880 shares, indorsed in blank, which had been hypothecated by Davis and by one Smith to secure notes for amounts equal to the par value of Davis' stock less $5,000 and the par value of Smith's stock less $2,500. Berg held this stock under an agreement that the note should be paid out of dividends declared upon the hypothecated stock, and that he would not, in the meantime, demand payment of the note. The corporation had been organized to take over the business of a partnership in which the plaintiff Berg held a controlling interest, and the purpose of the corporation was to carry on, in corporate form, certain business activities which Berg desired to pursue in this country.

Before Berg left for Europe, in August, 1920, he gave to Walter E. Davis a written power of attorney which conferred upon Davis full power and authority to indorse and otherwise execute promissory notes "and any and all negotiable instruments * * * that may come into his (Davis') hands and possession or which may be necessary to carry on the business conducted by me (Berg) in the United States of America under the name of A. J. Berg, having its principal office at No. 108 Broad Street in the City, County and State of New York, or any other business in which I may be interested. * * * "

The $30,000 note, referred to above, was given September 28, 1921, and was received in lieu of four notes of the W. E. Davis Company aggregating $30,000 which were marked "Paid" on that date. None of these four notes was a collateral note, and none of them bore the indorsement of Berg by Davis' attorney. The $30,000 note was secured by a pledge of leather and an assignment of accounts receivable. The proceeds of the collateral were from time to time indorsed upon the note, so that at the time of the

payment by the defendant the amount due thereon was $14,060.33. About the time this note was given it had become apparent that the business of the W. E. Davis Company was not a paying proposition, and Davis and his associates had reached the conclusion that the only feasible course would be to liquidate, and the giving of the collateral note was a step in the process of liquidation. The bank had demanded Berg's indorsement, and Davis, after consulting with the defendant, came to the conclusion that it would be for the best interest of Berg to comply with the demand and proceed with the liquidation. He believed at the time that the assets of the corporation, if advantageously liquidated, might be nearly sufficient to pay the indebtedness of the corporation. Throughout the entire transaction, Davis acted in good faith, and he testified that he immediately notified Berg of what he had done. I have little doubt that Berg shortly thereafter learned of the indorsement. His statement, made November 26, 1921, that the proceeds of the bonds would fully pay his creditors, is not necessarily inconsistent with knowledge of the indorsement since the indorsed note was secured by collateral, the proceeds of which was being applied to reduce the note. At the time of the distribution Berg's liability to the People's National Bank, not including any possible liability on the $30,000 note of the Davis Company, aggregated $49,930.60. Concerning these obligations, there is no question. The aggregate amount of these undisputed obligations was, therefore, in excess of $45,094.40, the amount paid by Friedman to the bank. It appeared that the bank actually applied this sum to the full payment of the balance due on the Davis Company note, the remainder being credited on Berg's undisputed obligations. The defendant had nothing to do with the application of this payment, and did not know of it until later. If the Davis note is treated as a valid obligation of Berg, the unpaid balance due the bank from Berg after the distribution was $18,896.54.

If we eliminate the balance due on the Davis note, Berg was and is still indebted to the People's National Bank in the sum of $4,836.20 plus interest. Berg thereafter made no further payments to the bank. He is also indebted to the estate of John E. Kerr. The plaintiff has failed to prove his essential allegation that neither the People's National Bank nor its successor, nor the official representatives of the estate of John E. Kerr, has any interest in the subject-matter of this controversy.

Although under date of June 7, 1923, Friedman fully reported to Berg what he had done by way of administering the trust funds which came into his hands, it was not until the 18th day of October, 1928, that these proceedings in equity were instituted. In 1925 Friedman met Berg in New York and then, for the first time, Berg indicated that he disapproved of Friedman's distribution, and then his complaint was that he thought Mr. Friedman might well have waited for his pay until Mr. Berg returned. The interview was closed with Mr. Berg remarking that he felt that their friendship was at an end, that he would never speak about it again, saying: "It is a closed book as far as I am concerned, but if you have got any bill now against me go ahead and send it." Thus five years elapsed after Berg had first learned of Friedman's acts before he questioned the legality of them or made any demand for any part of the trust funds.

In all matters relating to the execution of the trust, the defendant acted openly and in good faith. I find that he disclosed to the plaintiff all material facts. No misrepresentation of any such fact was made, nor was there any undue or improper advantage taken of knowledge that he had acquired in in any confidential relationship, either as trustee or attorney. The trust instrument made no express provisions for the defendant's compensation as trustee, and the defendant expressly waived all claims to such compensation providing the beneficiaries of the trust would consent to his receiving out of the trust fund a substantial payment on account of Berg's indebtedness to his firm. To this the creditor-beneficiaries assented in writing.

The plaintiff now claims that, under the terms of the assignment by him to Friedman, trustee, Friedman had no authority to make any payments to the creditors without first getting Berg's approval. This contention is without merit. In the first place, as I have already stated, the correspondence clearly shows that Berg contemplated that as soon as the securities were available the proceeds would be applied to Berg's indebtedness to the creditors named in the assignment. Moreover, it must be kept in mind that Berg, by the instrument, conveyed his full title to Friedman as trustee for the three creditors. It was to the beneficiaries named that Friedman owed his duty as trustee. It was for their benefit that the trust was to be administered. In the absence of any express reservation of that right, the defendant

was not entitled to determine when the proceeds should be distributed among the beneficiaries.

■ Another contention made by the plaintiff is equally untenable on its face. He objects to Friedman's conduct in allowing the creditors to determine the amounts of their claims without himself making an investigation to ascertain the correct amounts due, but inasmuch as all of the creditors received payment of only a portion of their claims, and since there is no suggestion that any of them was overpaid, it is difficult to see how the plaintiff could possibly have been harmed by any failure of Friedman to ascertain the correct amount due.

The real controversy arising in the equity case is over plaintiff's claim that the defendant should account to him for the dividend paid on the Davis Company note and the $8,589.57 applied by him to the payment of defendant's bill for services.

■ Respecting the indorsed note, which constituted a part of the claim of the People's National Bank, it is the plaintiff's contention that the indorsement of the note by Davis, as attorney, was unauthorized and should not have been considered in the computation of the bank's share in the proceeds of the trust property. The plaintiff claims that because of this alleged unlawful transaction the defendant should account to him for the sum of $14,060.33.

It is urged that the authority conferred upon Davis by the written power of attorney was limited to the indorsement of commercial paper necessary to carry on plaintiff's business under the name of A. J. Berg, or any other business in which he might be interested. It is said that this authority was exceeded (1) because the affairs of the W. E. Davis Company did not come within the meaning of "any other business" in which the defendant was interested, and (2) that the note indorsed was not necessary to "carry on" that business, and (3) that the power to indorse did not carry with it authority to waive demand and notice.

It is clear, from a careful study of the language of the power of attorney, that it was the intention of the plaintiff to give to Davis, as his agent, broad powers to enable him to fully protect and carry forward any of Berg's business interests in this country while he was in Europe. The instrument expressly grants to the attorney full authority in Berg's name and behalf to sign, deliver, and otherwise execute, any and all instruments in writing that he might deem proper and necessary in the premises, and otherwise act in and concerning the premises as fully and effectually as Berg might have done if he were personally present. The business of the W. E. Davis Company was a business in which the plaintiff was vitally interested. He was a director, and to all intents and purposes he was the sole stockholder, and whatever was done to advance the interests of that company would equally conserve the interests of Berg.

Davis testified that he thought that if it got abroad that the affairs of the Davis Company were involved, it would arouse Berg's creditors to action which might seriously embarrass him, and for that reason he (Davis) thought it was for Berg's interest to comply with the request of the bank for an indorsed note. The defendant shared in this belief, and in advising Davis he acted in good faith without reason to anticipate that Davis' authority to indorse could or would be questioned. Whether, as a matter of law as between the bank and Berg, the bank has a valid obligation, is a question which need not be determined in these proceedings and ought not to be determined in any proceeding to which the bank is not a party.

■ If it be assumed that Davis did exceed his authority in indorsing the note on behalf of the plaintiff, then it would follow that the bank received a larger percentage upon Berg's undisputed indebtedness than did the other creditors; and without showing that the bank and the other beneficiaries of the trust have been fully satisfied there is no ground upon which to base a decree ordering the defendant to pay any proceeds to the plaintiff.

If it be held that Berg is not liable on the Davis note, still the distribution of the assigned securities would operate to reduce Berg's legal liabilities to the beneficiaries. Berg would not be the one prejudiced by any inequalities in the distribution.

■■ As to the amount deducted from the trust funds and applied to Berg's indebtedness to Friedman, or Friedman & Atherton, the situation is a little different. While Friedman, as trustee, was entitled to reasonable compensation for administering the trust, he made no such charge. However, he was not of the beneficiaries of the trust, and his act in applying a portion of the trust property was not authorized by the terms of the trust agreement. What he did was done with the consent and approval of all of the beneficiaries under the trust, and Fried-

man was undoubtedly justified in the belief that, if the creditors consented, Berg would have no objection to a portion of the proceeds being applied to reduce his honest obligations.

It by no means follows that, because this sum was deducted from the proceeds of the securities assigned in trust, the plaintiff is entitled to recover it in this equitable proceeding. This sum had already been credited upon the amount which was owed to Friedman & Atherton by Berg, and if Friedman were compelled to account for this amount it would only increase the amount which he would be entitled to recover in the action at law above mentioned. One of the cardinal maxims of equity is that he who seeks equity must do equity, and it would seem to be manifestly inequitable on the part of the plaintiff to call for an accounting of trust proceeds applied to reduce indebtedness which had been existing at the time of the application for over three years, and which at the time of suit, had been existing seven or eight years, without first making some equivalent payment on the indebtedness.

But apart from the want of equity in plaintiff's demand, it is to be remembered that he had conveyed his interest in the bonds and cash to the defendant in trust for three creditors. Unless and until these creditors are fully satisfied, the plaintiff has no rights in the trust property which he can assert or enforce by proceedings in equity. Two at least of the creditors for whose benefit the trust was declared have not been paid. This fact alone would defeat the plaintiff's rights to prevail in these proceedings.

A decree may be entered dismissing the bill, with costs to the defendants.